## COCA-COLA COMPANY et al. v. CITY OF ATLANTA.

1. Equity has jurisdiction to decree a discovery when no other adequate remedy is available, and the discovery prayed is ancillary to some other proceeding, either pending or to be brought. This is true notwithstanding the equitable petition prays no other relief than a discovery, which is ancillary to a proceeding to be brought against a party or parties other than the defendant in the equitable action. That the defendant in the equitable action has no pecuniary interest in the litigation, or subject-matter involved, will not operate to defeat a discovery which the petitioner is otherwise entitled to.

2. A proceeding is some act, or acts, done in furtherance of the enforcement of an existing right, real or imaginary. It may be by petition in a court of competent jurisdiction, or by a summary remedy prescribed by statute. The assessing of properties for taxation by a municipality, in accordance with its ordinances, the issuing of executions upon such assessments when the taxes are not paid as required by law, and the seizure and sale of the properties so assessed, under such executions, for the taxes due, constitute a proceeding.

3. Stocks of corporations organized under the laws of other States are liable for municipal taxes in this State when the owners of such shares reside within the corporate limits of such municipality. The location of the assets of the corporation is not a material fact in determining the liability of the shares of such a corporation for taxes; but if it were otherwise, a corporation organized in Delaware and having 85 per cent. of its properties out of this State, could not be classed as a domestic corporation in Georgia.

4. The classification of the stocks of corporations by the laws of this State, whereby the shares of corporations of this State are exempt, and the shares of corporations of other States are liable for taxation, when owned in this State, is not an unlawful classification, nor

is it in violation of section 2 of article 7, or paragraph 2 of section 1 of article 1 of the constitution of this State. Neither is such classification in violation of the 14th amendment to the Federal constitution, for any reason assigned.

5. Under the pleadings and the agreed statement of facts in the instant case, the petitioner was entitled to the discovery prayed; and the trial court did not err in overruling the defendants' demurrers, nor in entering the decree in favor of the petitioner.

No. 2697. JANUARY 28, 1922. REHEARING DENIED FEBRUARY 18, 1922.

Equitable petition for discovery.   Before Judge Pendleton. Fulton superior court. May 31, 1921.

The City of Atlanta, a municipal corporation, brought its petition against the Coca-Cola Company, S. C. Dobbs, and William Candler, alleging that the Coca-Cola Company was a corporation of the State of Delaware; that it had an office in the. City of Atlanta, wherein were kept its books and records; that Dobbs was president and Candler secretary of the company, and that they resided in said county.

The petition alleged that the corporation had a number of stockholders residing in the City of Atlanta, and that their shares in the corporation were subject to taxation by the municipal body; that the owners of these shares had failed and refused to return them for taxation, and that the petitioner had not been able to ascertain their names or the amount of their respective holdings; that the petitioner had made formal demand on the corporation, its president and secretary for a list of the names of the stockholders of said company residing in said city, in order that the petitioner might assess such shares for taxation, but that the company and its officers had refused to furnish the information desired.

The petitioner averred that it had duly enacted ordinances providing for the assessing of these shares for taxation, and the levying and collection of the taxes; that the taxing date for the year was January 31, 1920, prior to the date of the filing of the petition, and that petitioner had a lien on all shares of the corporation owned by residents of the City of Atlanta on the taxing date aforesaid.   Petitioner, averring that its purpose was to assess these shares of stock for taxation as soon as it ascertained the names of the resident owners, and that it was without other remedy, prayed that it have discovery from the defendants of the names of all stockholders in said company who resided in the City of Atlanta on January 31, 1920, and the amount of stock owned by each.

The defendants demurred generally and specially, but later waived the special demurrers. The grounds insisted upon were that the petition set forth no cause of action, or right of discovery against the defendants or any of them; that the petition sought no affirmative equitable relief, and was not ancillary to any other civil proceeding then pending or to be brought; that the petition showed that the defendants had no interest in the subject-matter of the suit or in any civil proceeding to which this petition could be ancillary, or any petition that might hereafter be brought; that the petition shows that the defendants are mere witnesses, and are not proper parties defendant to a petition for discovery; that the petition does not allege that all or the greater part of the physical properties of the corporation are located out of this State, and consequently pay ad valorem tax to some other State; that the petition does not show that the greater part of its tangible properties are not located within the State and that the company does not pay all taxes thereon to the State, County and City; that the petition does not show any authority in the petitioner to assess taxes against these shares or collect taxes from the owners who reside within the city; that the petition does not show that if the petitioner should collect taxes from the holders of these shares such collection would not be the collection of taxes a second time or double taxation.

The defendants also filed an answer admitting the averments in the petition, except: they denied that the shares of the corporation were subject to taxation by the complainant, and averred that the corporation returned its real and personal properties located in the City of Atlanta and paid all taxes thereon required by the State, County, and City of Atlanta; that the defendant corporation owned like properties in many other places in this country and Canada, and that said company paid all taxes required upon all these properties to the various municipalities, counties, states and provincial authorities where located. Defendants contend that to require its shares owned in the City of Atlanta to be taxed by the petitioner would in effect be a double taxation of the assets of the corporation, and that no allowance is made for the fact that the corporation owns properties in the City of Atlanta.

The defendants deny that the petitioner has a lien upon the shares of the corporation which are owned in the City of Atlanta;

they admit that the petitioner has ordinances for assessing, levying, and collecting taxes, but deny that these ordinances have any reference to these shares, for the reason that the shares are not liable for taxation by the City of Atlanta. The defendants aver that they have no interest in the question of whether the stock in this corporation is subject to taxation or not, and say they have no authority to divulge the names of the stockholders, or, if such authority existed, their books would not necessarily show who were the actual owners of the stock, inasmuch as the stock is from time to time being transferred, and the transfers are not recorded on the books of the corporation. They say that if the discovery prayed should be decreed it would be useless, for the reason that there is no action at law or equity or otherwise which could compel the stockholders in this company to pay taxes on their stock to the City of Atlanta.

The defendants further answering say that the purpose of the City of Atlanta in seeking this discovery is illegal, unconstitutional, and contrary to the laws of this State and the United States, and particularly to section 2 of article 7 of the constitution of the State of Georgia, which provides that "all taxation shall be uniform upon the same class of subjects," etc. The contention is, that, inasmuch as shares in domestic corporations of this State are not liable for taxation, and the Coca-Cola Company owns properties in Georgia and in the City of Atlanta, on which it pays the required taxes, the collection of the tax upon the shares owned in the City of Atlanta would not be uniform but would result in a double taxation. The defendants also say that such action on the part of the city would be violative of paragraph 2, section 1, article 1 of the constitution of Georgia, which provides that "protection to person and property is the paramount duty of government, and shall be impartial and complete," the contention being that, inasmuch as shares in domestic corporations are not subject to taxation, to tax shares of the Coca-Cola Company would be violative of this clause of the constitution.

It was further contended that the purpose of the city as set forth in its petition would be violative of the 14th amendment of the constitution of the United States, based upon the contention that inasmuch as the Coca-Cola Company pays taxes upon certain of its property to the City of Atlanta, the levying of a tax upon

36

its shares owned in said city would be double taxation, and that the owners of such shares would not be protected as are the owners of shares of domestic corporations, but would be deprived of their property in violation of this amendment.

The case was heard by Judge Pendleton upon an agreed statement of facts, with the right to either party to except by direct bill of exceptions. It was recited in this agreement that the corporation returned all its corporate properties within the City of Atlanta for taxation to the State, County of Fulton, and City of Atlanta; that all of its other properties out of the State were returned for taxation, and the taxes thereon are paid to other states, counties, cities and countries; that the percentage of physical properties located in the City of Atlanta is approximately 15 per cent., as compared with the total amount of all similar properties owned by said corporation; that the total properties located within the City of Atlanta on January 31, 1920, was approximately $300,000, and the total properties belonging to the corporation located outside of the State on that date was approximately $2,000,000; that shares in domestic corporations in this State are not required to be returned for taxes nor are taxes assessed against such; that all the property of the corporation in this case within the State of Georgia is located within the City of Atlanta; that the entire capital stock of the defendant company is held under a voting-trust agreement; that voting-trust certificates are issued and these are transferred to several different persons, without the original certificate being surrendered for the purpose of having a new certificate issued to the then transferee or owner of such certificate; that the voting trustees have appointed agents to sign and deliver the voting-trust certificates, and these agents keep books showing the names of the persons, who, in so far as the books are concerned, are the holders of these certificates. These trust certificates are listed upon the New York stock exchange, and the transfer of these certificates without the surrender thereof is more frequently had than in the instance of a transfer of certificates of stock in corporations whose stock is not listed upon the stock exchange.

The court overruled the demurrers, and entered a decree in favor of the petitioner for the discovery as prayed. The court appointed a commissioner to examine the records of the corporation and ascertain the names of all stockholders of the company residing

in the City of Atlanta on the 31st day of January, 1920, with the amount of stock held by each. The defendant company was required through its secretary to produce to the commissioner, at a time to be agreed upon, its stock-book, to enable the commissioner to make a list of the owners of the stock as required by the decree. It was provided that the commissioner should make. only such an investigation as would disclose the names of the stockholders.

The defendants excepted to the overruling of their demurrers, and to the entering of the decree against them.

Justices Hill and Gilbert being disqualified, Judges Blair of the Blue Ridge Circuit, and Searcy of the Flint Circuit, were designated to sit in their stead.

*Charles T. & John L. Hopkins, Spalding, MacDougald & Sibley, Anderson, Rountree & Crenshaw,* and *Candler, Thomson & Hirsch,* for plantiffs in error.

*James L. Mayson* and *Jesse M. Wood,* contra.

BLAIR, J. 1. " For every right there shall be a remedy." Civil Code, § 5506. The right of the municipality in this instance, as set forth in its petition, is to ascertain the names of persons residing within its corporate limits, who are owners of shares of the corporate stock of the Coca-Cola Company, a Delaware corporation, together with the number of shares owned by each person, in order that the petitioner may assess and collect the taxes that are due or may become due on these shares. The averment is that the prescribed legal remedy has proved inadequate, in that the owners of these shares have failed and refused to return them for taxation, or even disclose the fact of their ownership. Request to the corporation and its officers, who are parties to this case, for the information necessary to enable the municipality to exercise what it conceives to be its right and duty in assessing these shares for taxation, has been met with a refusal. In so far as now appears, the petitioner has exhausted its legal remedies; and unless some extraordinary remedy can be made available, the right of the municipality to tax these shares must be lost, and that too without an opportunity being afforded it of showing that they are subject to taxation. Confronted with this situation, the municipality brought its petition for discovery from the defendants of such facts only as will enable it to bring in question the liability of these shares for taxation. One of the questions is, can the petition be sustained? The corporation

and its officers strenuously deny the right of the petitioner to this discovery; but they do not suggest any other remedy, legal or equitable, that is, or might be made, available to the petitioner. The elaborate brief of their counsel does not point the petitioner or the court to any other place where, or method by which, the facts desired can be obtained. Their attitude is in apparent denial of the postulate which heads this opinion. The court is therefore confronted squarely with the issue, is equity equal to the necessities of the situation, and will it come to the aid of the petitioner by decreeing the discovery prayed?

Discovery is not a stranger to our procedure. It is written into our constitution that the legislature " shall provide, by law, for reaching property of the debtor concealed from the creditor." Civil Code, § 6387. " Creditors are a favored class under our law. The second section and sixth paragraph of the bill of rights confers upon the legislature power to provide for the punishment of fraud, and declares, in unmistakable and unequivocal terms, that it shall provide by law for reaching property of the debtor concealed from the creditor. This fortifies existing legislation, upon the subject, which directs the courts to favor the rights of creditors, and to afford them every remedy and facility to detect, defeat, and annul any effort to defraud them of their just rights." *Hood* v. *Perry,* 75 *Ga.* 312. A whole chapter of our code is devoted to discovery in equity. Civil Code, § 4543 et seq. Another is devoted to discovery at law. Civil Code, § 4550 et seq. In a measure, every garnishment calls for a discovery, and when necessary answers may be enforced by attachment. *Garden* v. *Crutchfield,* 112 *Ga.* 274, 278 (37 S. E. 368). Under certain contingencies an agent may be compelled to discover against his principal. *Ballin* v. *Ferst,* 55 *Ga.* 546 (6). Judgment and attaching creditors are entitled to discovery from corporations, with reference to their stockholders, on demand and without the aid of legal process. " Upon demand by any sheriff, constable, or other levying officer of this State, having in his hands any execution or attachment against any person who is the owner of any shares or stock of said bank or joint stock company, upon the president, superintendent, manager, or other officer of any corporation or joint stock company having access to the books thereof, said president, superintendent, manager, or other officer aforesaid shall disclose to said levying officer the number

of shares and the par value thereof owned by the defendant in said execution or attachment, and, on refusal to do so, shall be considered in contempt of court and punished accordingly." Civil Code, § 6035. This statute provides a remedy by discovery in favor of the ordinary creditor without lien, where his debtor is subject to attachment and his shares to seizure thereunder. In the instant case the petitioner avers that it has a lien upon the shares sought to be disclosed for the taxes due thereon, and that these shares are subject to be seized and sold therefor. It is not necessary to hold that the present case is within the letter of this statute, or that the officers of this corporation were subject to attachment under its provisions. It is sufficient for the purposes of the present litigation to declare that the policy of our law is to discover, disclose, reveal all properties of debtors in so far as it may be necessary to secure the rights of creditors, and that it is the duty of the courts to interpret statutes liberally to the end that this policy of the law be not defeated. If there be exceptions to the rule, it is not because the complainant happens to be the State, a county, or municipality of this State.

2. Plaintiffs in error contend that the court was without jurisdiction to decree the discovery prayed, because no other relief was sought, and that "discovery alone" can not be decreed except when "ancillary to some other civil proceeding;" citing Civil Code, § 4543. We may concede that their construction of this code section is the proper one, but disagree with them in its application to the facts of this case. What is a proceeding? Some act, or acts, done in furtherance of the enforcement of an existing right, real or imaginary. A proceeding may be by petition in a court of competent jurisdiction or it may be by a summary remedy prescribed by statute. What is the purpose of the discovery prayed in the instant case? First, that the petitioner may assess the shares of stock of this corporation, discovered to be owned in the City of Atlanta, for taxation; secondly, that executions may issue on these assessments against these shares or their owners for their respective taxes; thirdly, that the shares may be seized, advertised, and sold to satisfy the executions so issued. In our opinion these several acts constitute a "proceeding," an effective legal proceeding as provided by the laws of this State. It might have been provided by statute that tax delinquents should be sued as debtors upon accounts, but the

genius of our law has devised a more speedy, efficient proceeding. How efficient this proceeding is we need not recite, further than to say that it is adequate under all conditions, and to all situations, reaching back after the past as well as laying hold on the present. " There is ample provision in the laws of this State for proceeding against one who was a tax defaulter in the years that are past. As we have interpreted our laws, they afford ample machinery, consistent with constitutional provisions, for reaching every species of property that is subject to taxation at any time in the past that the taxing power is authorized to proceed for the collection of back taxes. There is no fault in the law." *Ga. R. &c. Co.* v. *Wright,* 125 *Ga.* 589, 601 (54 S. E. 52). Judge Cobb speaks of our laws for enforcing the payment of taxes as machinery, and when in operation as " proceeding." The purpose of the petition in this case is to uncover properties alleged to be liable for taxes, in order that other proceedings may be brought to subject them to the payment of taxes due on them. This petition seeks no recovery of taxes, but is in aid of and ancillary to other proceedings to be brought for that purpose. Without this preliminary relief, the other proceedings cannot be brought, and the municipality must fail in its efforts to collect the taxes on these shares. Discovery is a favored jurisdiction of equity, and it will not be denied where the effect of such denial will be to defeat public justice, unless the plain letter of the law so demands. That the relief prayed is within the letter of our law as well as its spirit, we entertain no sort of doubt. The petitioner being entitled to the discovery prayed, there is no merit in the contention that the plaintiffs in error are mere witnesses.

3. The further contention of plaintiffs in error is that the municipality is not entitled to the discovery prayed, for the reason that the shares of the Coca-Cola Company are not subject to taxation by the City of Atlanta. We state their contention from the brief of their counsel, as follows: " Inasmuch as the corporation has property within the City of Atlanta on which a tax is paid, the stock of the corporation owned by a resident is not subject to taxation." In support of this contention, the argument is offered " that no distinction is [to be] drawn between a domestic and a foreign corporation with reference to where it was chartered; that both a foreign and a domestic corporation are in the same class in so far as the place of their creation is concerned, and that stock

is exempt from taxation without regard to whether it was issued by a foreign or a domestic corporation, if the capital of such corporation was returned by the president; capital meaning the corporate assets." Further on we read that "The classification which now exists is the broad and fair one, and consists of whether the corporate property lies within this State and is returned for taxation. If it does, and is, then its shares of stock are exempt." The logical conclusion to be drawn from these statements is that the place of incorporation is not a material fact in determining the taxability of the shares of a corporation; and the brief so contends.

It will be noted that these excerpts contain no definite statement (nor does the brief elsewhere) as to what per cent. of the assets of a corporation must be located within this State, to entitle it to be classed as domestic. The fair inference to be drawn from the first excerpt is that if any part of the assets of a corporation is located within this State, it is domestic; while a reasonable interpretation of the last two seems to require that all the properties of the corporation be located in this State. Before we can judge of the soundness of a rule, it is necessary that we know what the rule contended for is. If the place where chartered is immaterial, and the all-controlling question is the location of the assets, what ratio of assets, within and without the State, will make the corporation domestic or foreign? Must all the assets be located within this State, to classify the corporation as domestic? Or is the majority rule of democracies sufficient for that purpose? If either supposition states the rule, it would seem that the Coca-Cola Company is not domestic; for it is agreed that less than 15 per cent. of its assets are within this State. Is a corporation, chartered and organized in Delaware, having 1 per cent. or 15 per cent. of its assets in Georgia, domestic in this State, so that its shares owned here are exempt from taxation? If so, it is conceivable that such a corporation may be domestic to a large number of States at the same time, and also may avoid the taxation of its shares altogether by incorporating in a State where it has neither stockholders nor assets, and by acquiring a small amount of taxable properties in each of the States where its stockholders may reside. It is also conceivable that the shares of corporations having many millions of assets may be largely owned in this State while only an infinitesimal portion of the properties of such corporations is located with-

in the State. In the event of such a contingency, under the contentions of the plaintiffs in error, the State would be restricted to taxing the assets to be found within its borders, while the great wealth represented by the shares owned in this State would be exempt. In our opinion the contention is unsound and cannot be sustained under the constitution and laws of this State.

What are the requirements of our constitution and laws? That all properties real and personal are liable to taxation. Park's Civil Code, §§ 1002, 6553. There are certain exceptions to this general rule, not involved here. Park's Civil Code, § 6554. Stocks are property and are valuable as the assets behind the shares make them so. The brief for plaintiffs in error concedes that corporate shares, owned in this State, are subject to taxation when the corporation is chartered, and the assets are all located, without this State. That is to say, the shares of such corporations when so situated are taxable property, and that it is the right and duty of the State, counties, and municipalities, to tax them when they are owned within their respective boundaries. And this right of taxation goes to the full value of the shares in the markets. The right is not impaired by or because the corporation may own some small taxable properties within the State. If so, the right of taxation of such shares, under the constitution and laws, would be dependent upon the absence of corporate assets from the State, and the right of such taxation would be lost by the presence of such assets within the State. Such a scheme of taxation would compel the State to accept the shadow, when but for the presence of the shadow it would be entitled to the substance. Such a scheme of taxation would put it in the power of individuals to defeat the right of taxation by shifting the assets of the corporation from one State to another, or by maintaining nominal assets within a jurisdiction for that purpose. In our opinion, the right of taxation cannot be lost in that way, but the State has the right to tax such shares, as well as the corporate assets, that may be found within the jurisdiction of the State. The Supreme Court of the United States, in Wright *v.* Louisville & Nashville Railroad Company, 195 U. S. 219 (25 Sup. Ct. 16, 49 L. ed. 167), in discussing the questions now before the court, said: "It certainly seems intended to tax once, at least, all property which can be come at in any way." That court accordingly held that shares of stock in a

foreign corporation owned by a domestic corporation of this State were taxable as the property of the latter. Commenting on the Constitution and laws of Georgia, that court said: "We do not understand and cannot believe that the Supreme Court of the State would deny the power of the Legislature under the present Constitution to tax stock." We do not understand that the Legislature has intended or attempted to exempt the shares of such corporations from taxation when owned in this State.

In our opinion the question now involved is controlled by the decision of this court in *Georgia Railroad &c. Co.* v. *Wright,* 125 *Ga.* 589 (supra). The ruling in that case was that the legislature had put the shares of corporations of this State in one class and the shares of corporations of other States in another class; that the shares of the former are exempt, but that the latter, when owned in this State, are liable for taxation. When the classification is determined, all shares belonging to that class fall within the rule applicable to it.

In *City of Albany* v. *Brown,* 137 *Ga.* 796 (74 S. E. 518), this court held that shares of domestic corporations were not taxable by municipalities, and that it was not material that the assets of the corporation were for the most part located without the limits of the municipality.

Plaintiffs in error deny that such a classification as indicated above is authorized by the laws of Georgia, and say that if such has been made, it is "clearly in conflict with both the State and Federal constitutions." The same contentions were made in the *Wright* case, supra, and the decision there made is adverse to the plaintiffs in error. It was there held that the legislature was within its power in exempting shares of Georgia corporations and taxing the shares of corporations of other States; that it had the power to tax shares of domestic corporations, but was not required to do so, and failing to tax them was not, as against the owners of shares of corporations of other States, violative of the provisions of either constitution. Judge Cobb pointed out that "the constitution of this State imperatively requires that all property of every nature whatsoever within the territorial limits of this State shall be subjected to taxation, except that which the constitution in terms declares the General Assembly may in their discretion exempt from taxation. *Atlanta National Building & Loan Asso.*

*v. Stewart,* 109 *Ga.* 80 (2) [35 S. E. 73]. A single tax upon any species of property will satisfy the demands of the constitution. A tax law will not be construed to tax the same propery twice, unless such a conclusion is constrained either by the express provisions of the law or by necessary implication. Gray on Lim. Tax. Power, § 1366. Many, if not all, laws imposing taxes upon property contain provisions which in effect tax some species of property more than once. There are in the tax laws of this State instances where the thing which gives value is twice taxed. Wherever there is the imposition of a tax upon one who holds the tangible article of inherent value, as well as upon another who holds merely the symbol which derives is value solely from the tangible article, the same property is twice taxed. The property of a corporation is that which gives value to its shares. If a tax is levied upon the property in the hands of the corporation, and a tax is levied upon the value of the shares in the hands of the shareholders, that which gives value to the holdings of the corporation and to the shares of the shareholder is unquestionably subjected to a double burden. While shares of stock are property in the hands of the shareholder, they have no inherent value, and derive their sole value from the tangible or other property which is owned by the corporation. The taxation of both the property of a corporation in the hands of the corporation, and the value of the shares in the hands of the shareholders, is manifestly an instance where the same property is twice taxed. It is double taxation in a sense, but not that species of double taxation which would be void. It is permissible, but not compulsory. Gray on Lim. Tax. Power, § 1372 et seq; Commonwealth *v.* Fall Brook Co., 156 Pa. St. 488 (26 Atl. 107) ; Commonwealth *v.* Lehigh Co., 162 Pa. St. 603 (29 Atl. 664)."

The kind of double taxation referred to by Judge Cobb may exist with reference to the owners of shares in corporations of other States. If their shares are owned in this State, the law is emphatic that they are liable for taxation; if such corporations own properties in Georgia, the statute is equally mandatory that they be returned for taxation. Where there is a concurrence of ownership of properties by such corporation and an ownership of its stocks, in this State, the double taxation spoken of by Judge Cobb results; but it is within the law and not beyond it. If such double taxation is unduly burdensome, the remedy pointed out by Judge Cobb " is

either a change of residence or a change of investment." Another alternative would be, to corporate or reincorporate in Georgia. A remedy should not be sought in a refusal to pay lawful taxes.

The constitutional questions made are not open ones. "The General Assembly not being required by the constitution to impose a tax on shares of stock in domestic corporations where the property of such corporations is taxed in the hands of the company, the failure of the General Assembly to impose such a tax, while imposing a tax upon shares in foreign corporations, is not, as to the owners of shares of the latter class, a violation of those provisions of the constitution of Georgia which require that protection to property shall be impartial and complete, and that all taxation shall be uniform upon the same class of subjects and ad valorem on all property subject to be taxed within the territorial limits of the taxing authority, nor of that provision of the fourteenth amendment to the constitution of the United States which declares that no State shall deny to any person within its jurisdiction the equal protection of the laws." *Wright* case, supra, 125 *Ga.* 590 (10).

Since the present case was submitted to this court, the Supreme Court of the United States has reaffirmed what it had previously decided, that " Exemption from double taxation by one and the same State is not guaranteed by the 14th Amendment (St. L. Sw. R. Co. *v.* Arkansas, 235 U. S. 350, 35 Sup. Ct. 99, 59 L. ed. 265) ; much less is taxation by two States upon identical or closely related property interests falling within the jurisdiction of both forbidden." Anderson *v.* Durr, U. S. (42 Sup. Ct. 15). Anderson, residing in Ohio, owned a membership, called a seat, in the New York Stock Exchange. The Ohio authorities assessed this membership for taxation, and he filed his bill to enjoin the collection of the tax. The Supreme Court of Ohio decided against him, as did also the Supreme Court of the United States.

In St. L. Southwestern R. Co. *v.* State of Arkansas, 235 U. S. 350 (35 Sup. Ct. 99, 59 L. ed. 265), the court said: " Nothing in the 14th amendment to the Federal constitution imposes any ironclad rule upon the States with respect to their internal taxation, or prevents them from imposing double taxation or any other form of unequal taxation, so long as the inequality is not based upon arbitrary discriminations."

In *Georgia R. Co.* v. *Wright,* 124 *Ga.* 609 (supra), this court said: " There is no arbitrary classification of shares in a foreign railroad corporation for taxation in this State.. Shares in domestic corporations are taxed, not in the same manner, but to a like extent with shares in foreign corporations. They are taxed indirectly, through the taxation of the corporation." The classification in Georgia, whereby the shares of certain domestic corporations are exempt from taxation, and the shares of corporations of other States are liable for taxation, is based upon the assumption that, as a general rule, the assets of domestic corporations are located within this State, and will be returned for taxation, and that the assets of corporations of other States are located without, and are not liable for taxation in his State. That there are exceptions where this assumption does not hold good — domestic corporations having assets without, and foreign corporations having assets with- in the State — will not suffice to make the classification unlawful, or render it violative of the constitution of this State, or that of the United States, in any of the particulars assigned.

The court did not err in overruling the demurrers or in entering the decree.

*Judgment affirmed. All the Justices and Judges participating concur.*

#### ON MOTION FOR REHEARING.

Reference is made in the preceding opinion to various statutes enacted for the benefit of creditors, to enable them to discover the assets of debtors and subject them to the payment of their claims. Objection is made that taxes are not a debt. Strictly speaking this is true; but it would be an anomalous situation to hold that the State, county, or municipality must be restricted to the plain letter of the law when it is wholly inadequate to protect or enforce rights as important as the collection of taxes. The anomaly does not exist. In *Citizens & Southern Bank* v. *State,* 151 *Ga.* 696 (108 S. E. 161), the right of the State and the County to resort to equity was recognized. In the opinion it is said: " While it is true that under our decisions taxes may not be a ' debt' within the strict meaning of that word, yet, so far as we are aware, this court has not gone further than to hold that an action at law will not lie in this State to collect taxes as a debt;

and it has not held, where an adequate remedy is not provided by statute, that equity will not assume jurisdiction in aid of the statute to collect trust funds which have been misappropriated and which should be collected and applied to taxes due the State and county. . . The legislature surely did not intend, by the passage of the act authorizing the collection of taxes by execution, to foreclose the State and county, in a case like the present, from collecting trust funds misapplied, where State and county taxes are admitted to be due and are withheld. Equity is the correction of that wherein the law by reason of its universality is deficient. The remedy by execution in the instant case is obviously deficient."

As to the other contentions of counsel, our ruling is sustained by the following authorities: 9 Ruling Case Law, 173. " A bill of discovery may be maintained, not only in aid of a suit already brought, but to aid the plaintiff in a suit which he intends immediately to bring if the bill discloses a cause of action. Where such a bill is brought, it is generally for the purpose of discovering the names or identity of the persons against whom it is sought to institute an action, and in such a case the party defendant to the discovery is not the person against whom the legal liability is sought to be established and enforced. And while a bill cannot be maintained against one who was in no way related to the transaction giving rise to the proposed action, but only accidentally has acquired knowledge of the names and identity of the persons sought to be held liable, it seems that the court has jurisdiction when it appears that the party against whom the bill is filed acts as agent for a principal whose name he is called on to reveal, especially if the agent has charge of the property or business by the management of which the plaintiff has suffered injury. The rule has been applied in the cases of attempts to enforce assessments on stockholders of insolvent corporations, to discover the true owners by a bill against one in whose name the stock stands on the corporate books, or against a broker who has purchased such shares for responsible clients, but who, with the intention of concealing their identity, has had the certificates issued in the name of an irresponsible person. . . . And so a bill may be maintained for the discovery of the names of the stockholders of a corporation and of the number of shares held by each, to enforce a personal liability of such stockholders."

In Brown *v.* McDonald, 133 Fed. 897 (67 C. C. A. 59, 68 L. R. A. 462), it was said:

" This bill is not for the mere discovery of evidence to be used in a trial at law, but it is to ascertain the names of persons against whom intended suits are to be brought to enforce alleged legal claims.    There are precedents for such bills of discovery, although the cases are of rare occurrence.    Perhaps the earliest cases sustaining the right to file a bill of discovery to ascertain the proper persons to make defendants in a proposed suit at law are Heathcote *v.* Fleete, 2 Vern. 442, and Morse *v.* Buckworth, 2 Vern. 443. In the former of these cases the bill was to discover who was the owner of a wharf and lighter, to enable the plaintiff to bring an action for damages to his goods by the lighter's being overset by the negligence of the lighterman; and in the latter case the plaintiff, a freighter, whose goods were burned by the negligence of the master or crew of a carrying ship, brought his bill to discover who were part owners of the ship, to enable him to bring an action. In each of these cases the defendant demurred, but the demurrer was overruled.    Another early case in which a like bill of discovery was held good on demurrer was Moodaly *v.* Moreton & E. I. Co., 2 Dick. 652, in which the purpose of the bill was to enable·the plaintiff to ascertain whom to sue at law for his wrongful ouster from leased premises..    In the recent case of Orr *v.* Diaper, L. R. 4 Ch. Div. 92, it was held that a suit would lie against shipowners who had shipped goods bearing counterfeits of the plaintiffs' trademark, for discovery of the names of the consignors from whom the goods were received, in aid of contemplated proceedings against the wrongdoers.    In overruling a demurrer the Vice-Chancellor well said: ' In this case the plaintiffs do not know, and cannot discover, who the persons are who have invaded their rights, and who may be said to have abstracted their property.    Their proceedings have come to a deadlock, and it would be a denial of justice if means could not be found in this court to assist the plaintiffs.'

" In 2 Story, Eq. Jur., § 1483, it is said that while in general it seems necessary, in order to maintain a bill of discovery, that an action should be commenced in another court, to which it should be auxiliary, ' there are exceptions to this rule, as where the object of discovery is to ascertain who is the proper party against whom the suit should be brought.'

"The case of Post & Co. *v.* Toledo, C. & St. L. R. Co., 144 Mass. 341, 346, 59 Am. Rep. 86, 11 N. E. 540, is a pertinent citation in support of the present bill. There a bill in equity was filed to obtain from the defendants discovery of the stockholders of an Ohio corporation, in order that the plaintiff might institute a suit in the courts of Ohio against them to collect a judgment which the plaintiff had obtained against the corporation. In overruling a demurrer to the bill, the court said: 'The present case must be determined by the principles declared in the few cases where the plaintiff does not know the names of the persons against whom he intends to bring a suit, and brings a bill against persons who stand in some relation to them or to their property, in order to discover who the persons are against whom he may proceed for relief.'

"We think that the case in hand comes within the principle common to all the foregoing cited decisions. The specific purpose of this bill is to discover who are the real owners of corporate stock alleged to be registered in the name of a nominal holder. Upon the averments of the bill the defendants are not mere witnesses."

See also 6 Encyclopedia of Pleading and Practice, 766.

*The application for rehearing is denied.*