29204. NATIONAL MANUFACTURE AND STORES CORPORATION *v.* HEAD, revenue commissioner.

DECIDED MARCH 20, 1942.    REHEARING DENIED APRIL 1, 1942.

*Hirsch, Smith, Kilpatrick, Clay & Cody,* for plaintiff.

*Ellis G. Arnall, attorney-general, Andrew J. Tuten, Claude Shaw Jr.,* for defendant.

STEPHENS, P. J.   The National Manufacture & Stores Corporation, a foreign corporation which had in 1927 become domesticated under the Georgia domestication statute (Code, § 22-1601), sued the State Revenue Commissioner for the restoration of $1790 which had been paid by the plaintiff, under protest, as its occupational tax for the years 1932 to 1935 inclusive.   The case is in this court on exception to the sustaining of a general demurrer to the petition.   The suit was filed in November, 1940.   A tax had been demanded of and paid by the plaintiff as a foreign corporation under the provisions of the Code, § 92-2403, for the years 1932 to 1935, on the plaintiff's "capital stock and surplus employed in this State."   For the purpose of this tax the plaintiff, although it had become a domesticated corporation in 1927, was treated by the taxing authorities as if the plaintiff were a foreign corporation.   In November, 1939, the taxing officials decided that this taxpayer should have paid an occupation tax for the years involved, as if it had been a domestic corporation.   Domestic corporations were required to pay an occupation tax measured by their total "issued capital stock."   This called for an additional tax of $1790.   The tax officials evidently arrived at this conclusion in view of the domestication statute (Code, § 22-1601), which, after setting forth the procedure by which a foreign corporation may become domesticated, provides: "Upon becoming domesticated such corporations and the stockholders thereof shall have the same powers, privileges, and immunities as similar corporations created under the laws of this State, and the stockholders thereof have, sub-

ject to the same obligations, duties, liabilities, and disabilities as if originally created under the laws of this State." It is alleged in the petition, in substance, that the taxing officials had, over a long period of time (from 1927 to 1936, customarily construed the applicable statutes to mean that a foreign domesticated corporation was required to pay an occupation tax as if it were a foreign corporation, and that more than this was not demanded of the plaintiff until November, 1939.

The sole question is whether, under the statutes as they existed in the years 1932 to 1935, inclusive, a domesticated foreign corporation should be required to pay an occupational tax based on its entire issued capital stock, as required of domestic corporations, or, on the other hand, should it be required to pay the tax on only that part of its capital stock and surplus employed in Georgia, as required of foreign corporations doing business in Georgia.

There are three statutes which must be considered and construed. One provides that a domestic corporation shall pay the tax on its entire issued capital stock. Code, § 92-2401. Another statute provides that a foreign corporation shall pay the tax on that part of its capital stock and surplus employed in Georgia. Code, § 92-2403. And still another statute provides that a foreign domesticated corporation shall be subject to the same obligations, duties, and liabilities as if originally created under the laws of this State. Code, § 22-1601. These statutes are as follows: "All corporations incorporated under the laws of Georgia, except those not organized for pecuniary gain or profit, in addition to all other taxes now required of them by law, are hereby required to pay each year an annual license or occupation tax as specified in the following scale: Corporations with issued capital stock." (Tabulation of amount of taxes listed here.) Code, § 92-2401. "All corporations incorporated or organized under the laws of any other State, Territory, or Nation, doing business or owning property in this State, except those not operated for pecuniary gain or profit, in addition to all other taxes now required of them by law, are hereby required to pay each year an annual license or occupation tax for the privilege of carrying on their businesses within this State, as specified in the following scale: When the amount of capital stock and surplus employed in the State is . . " (Tabulation of amount of taxes listed here.) Code, § 92-2403.

"Powers after domestication.—All foreign corporations doing business in this State, or which may hereafter do business in this State, and whose business is not against the public policy of this State, shall have the power to become domesticated in the manner hereinafter pointed out; and upon becoming domesticated such corporations and the stockholders thereof shall have the same powers, privileges, and immunities as similar corporations created under the laws of this State, and the stockholders thereof have, subject to the same obligations, duties, liabilities, and disabilities as if originally created under the laws of this State, and shall no longer have that power of removing causes to the United States courts which inheres in foreign corporations." Code, § 22-1601. All of these statutes were in existence during the years 1932 to 1935, inclusive, during which time the plaintiff was required to pay taxes only as a foreign corporation, as provided in the Code, § 92-2403, on the part of its capital stock and surplus employed in Georgia.

It appears from the petition that the taxing authorities, in collecting taxes from the plaintiff for the years 1932 to 1935, inclusive, construed and applied the law relative to the taxation of the plaintiff, which was a foreign corporation domesticated in this State and doing business in this State, as providing that the plaintiff should be taxed as a foreign corporation and not as a domestic corporation, and collected taxes from the plaintiff on this basis during these years. Where the officials of a governmental department charged with the interpretation and enforcement of statutes continuously adopt certain constructions of the statutes and laws in the performance of their duties in enforcing them, some deference will be given by the courts in construing such statutes and laws to the construction placed on them by the department officials in the performance of their duties, where the statutes or laws are not clear and not unequivocal in their meaning, or their construction is doubtful and not plain. *State* v. *Camp*, 189 *Ga.* 209 (6 S. E. 2d, 299). Code §§ 92-2401 and 92-2403, which contain the only statutory authority which would expressly authorize the imposition of the tax in question on the plaintiff, impose taxes on domestic corporations and on foreign corporations doing business and owning property in this State. So far as appears from the terms of these sections, a tax imposed thereunder is not in terms expressly imposed on a "domesticated" foreign corporation. Un-

der these sections a corporation must be either taxed as a domestic corporation or as a foreign corporation doing business in this State. The taxing authorities, during the years in question, in imposing the tax on the plaintiff, which was at the time a domesticated foreign corporation doing business in this State, treated the plaintiff as merely a foreign corporation doing business in this State, and taxed it accordingly as provided in the Code, § 92-2403, which provides for the taxation of foreign corporations doing business in this State, by taxing it in proportion to the amount of its capital stock and surplus employed in Georgia. This construction of the act was carried out by the taxing authorities continuously throughout the years in question, in dealing with the plaintiff. It does not appear unequivocally that under these Code sections the plaintiff was subject to be taxed as a domestic corporation, and the continuous conduct of the taxing authorities in construing these sections and in taxing the plaintiff as a foreign corporation can be given some deference by the courts in arriving at the meaning of these sections as respecting the method of imposing a tax on a domesticated foreign corporation doing business in this State, such as the plaintiff was at that time. The taxing authorities, in their construction of these taxing acts as applied to the plaintiff during the years in question, were either oblivious to the provisions of the statute providing for the domestication of corporations doing business in this State as contained in the Code, § 22-1601, or they construed such statute relative to the domestication of foreign corporations as inapplicable to the situation, and as not authorizing the taxation of a domesticated foreign corporation as if it were a domestic corporation. This domesticating act, while providing that a domesticated foreign corporation in this State shall be "subject to the same obligations, duties, liabilities, and disabilities, as if originally created under the laws of this State," contains no express provision imposing any taxes on a foreign corporation which has become domesticated under this act and does business in this State. This act certainly does not unequivocally demand a construction that it imposes the same taxes on a domesticated foreign corporation as are imposed by the Code, § 92-2401, on a domestic corporation. The taxing authorities, in taxing the plaintiff during the years 1932 to 1935 as a foreign corporation doing business in this State, as provided in the Code,

§ 92-2403, certainly did not construe the domesticating statute or any other statute as giving authority to impose on the plaintiff the tax imposed by law on domestic corporations. There is therefore departmental construction of laws and statutes which are not clear and unequivocal in their meaning. Some deference therefore might be given by the courts to this construction of the laws by the taxing authorities. Under this construction by the taxing authorities the plaintiff was taxable as a foreign corporation doing business in this State, notwithstanding the fact that the plaintiff at the time was a domesticated foreign corporation doing business in this State.

We do not plant our decision on the actions of the taxing authorities construing the tax acts referred to. We merely refer to their construction as persuasive authority, and as being worthy of consideration in arriving at a correct decision of this case. Independently of any departmental construction of these taxing acts, this court concludes, on its own construction of the statutes and the Code sections referred to, that under §§ 92-2401, 92-2403, notwithstanding the statute providing for the domestication in this State of foreign corporations doing business in this State as contained in § 22-1601, during the years 1932 to 1935, the plaintiff corporation was, as a foreign corporation doing business in this State, taxable under the provisions of the Code, § 92-2403, and was not taxable as a domestic foreign corporation under § 92-2401, and that the taxing authorities were not authorized afterwards to exact of the plaintiff an additional amount in taxes which was applicable to domestic corporations, which tax, when demanded of the plaintiff, the plaintiff paid under protest as being the amount due by the plaintiff during the years 1932 to 1935 under § 92-2401.

The provisions of the act authorizing the domestication of a foreign corporation (Code, § 22-1601), that a domesticated foreign corporation is "subject to the same obligations, duties, liabilities, and disabilities as if originally created under the laws of this State," can not properly be construed as rendering a foreign corporation domesticated under the act subject to the same tax imposed on a domestic corporation as provided in the Code, § 92-2401. A tax can not be imposed by implication. It can only be imposed by plain and unambiguous language. The provisions of this statute do not in express terms impose any tax on a domesticated for-

eign corporation. Nothing in *Head* v. *Rich,* 190 *Ga.* 680 (10 S. E. 2d, 183), or in *Head* v. *Rich,* 61 *Ga. App.* 293 (6 S. E. 2d, 73), is in conflict with the ruling here made.

It is suggested that the act of 1935 was abortive in that by the omission of a comma after the word "profit," domesticated foreign corporations were relieved of taxation, and that therefore the act of 1929 is not applicable for taxing domesticated foreign corporations. Be that as it may, we are not concerned with recent enact-.ments of the legislature authorizing the taxation of domesticated foreign corporations, except so far as their enactment might indicate that the law theretofore in existence did not authorize the taxation of domesticated foreign corporations. Whatever may be the construction placed on the act of 1935, the legislature later, in 1941, provided for the taxation of both domestic and domesticated foreign corporations on the same basis. There is therefore legislative and departmental recognition that under the law as previously existing either prior to 1935 or 1941, and particularly from 1932 to 1935, the years with which we are concerned in this case, there was no law taxing a domesticated foreign corporation on the same basis as a domestic corporation.

The plaintiff was not due the taxes required of it for the years 1932 to 1935, and which it paid under protest. The plaintiff is entitled to recover the moneys so paid. The petition set out a cause of action, and the court erred in sustaining the demurrer.

*Judgment reversed. Sutton and Felton, JJ., concur.*